149 So. 541

## STATE v. CITY OF MONROE.

No. 32283.

July 7, 1933.

Harry H. Russell, of Monroe, for appellant.

Peyton R. Sandoz and Justin C. Daspit, both of Baton Rouge, and Joseph B. Dawkins, of Monroe, for the State.

ST. PAUL, Justice.

The state of Louisiana sues the city of Monroe, a municipal corporation, for taxes on a tank carload of gasoline under Act No. 6 of 1928 (Ex. Sess.), as amended by Act No. 8 of 1930 and Act No. 16 of 1932, and as supplemented by Act No. 1 of the Extra Session of 1930.

The purchase of the carload of gasoline was made by the city in Port Arthur, Tex., and imported into this state for its own use.

There was judgment below for plaintiff, and defendant appeals.

### I.

The defendant urges three propositions:

First, that the gasoline tax statutes do not include municipalities within their purview.

Second, that the gasoline tax statutes, if applicable to gasoline imported into the state from other states for use only and not for

---

[1] Rehearing pending at date of publication.

sale, constitute an unwarranted interference with interstate commerce.

Third, that the gasoline tax statutes, if applicable to gasoline imported into the state by a municipal corporation for its own use, is a violation of article 10, § 4, p. 82, of the Constitution of 1921 amended in 1926, which declares that "all public property" shall be exempt from taxation.

## II.

Section 2 of Act No. 6 of the Extra Session of 1928 reads as follows:

"The aforesaid tax of four cents per gallon shall be collectible from all persons, firms, corporations or associations of persons, engaged as *dealers* in the handling, sale or distribution of such products within the State of Louisiana, the method of collection to be as prescribed in Section 4 of this Act. The term 'dealer' as used in this Act is defined to mean any person, firm, corporation or association of persons, who produces, refines, manufactures, blends or compounds gasoline or motor fuel for sale to the jobber or consumer, or to the persons, firms, corporations, or associations of persons who, in turn, sell to the jobber or consumer. The term *'dealer'* is further defined to mean the person, firm, corporation or association of persons who imports such gasoline or motor fuel from any other State or foreign country for distribution, sale, or use in the State of Louisiana. On all gasoline or motor fuel imported from other States and used by him, the 'dealer' as thus defined shall pay the tax on the amount so imported and used, the same as if it has been sold for domestic consumption."

In Oregon and Utah, under statutes worded substantially the same as ours and under circumstances practically the same as here presented, it was held that municipalities and counties were not exempt from such a tax. City of Portland v. Kozer, 108 Or. 375, 217 P. 833; note 60 A. L. R. 879; Crockett v. Salt Lake County, 72 Utah, 337, 270 P. 142, 60 A. L. R. 867.

But apart from these precedents, and seeking the legislative intent from the statutes as a whole, we are of opinion that it was clearly the legislative intent to levy an excise tax of 4 cents per gallon on every gallon of gasoline sold, distributed, or used within the state. For by section 7-B of Act No. 6 of 1928 (Ex. Sess.), as amended by Act No. 16 of 1932, § 2:

"The importation into this State, the transportation, carriage, or movement from point to point in this State by any automobile, truck, boat, conveyance, vehicle or other means of transportation of any gasoline or motor fuel on which the tax is levied by said Act and upon which gasoline or motor fuel the tax as levied by said Act has not been paid, is hereby prohibited, and the said automobile, truck, boat, conveyance, vehicle or other means of transportation so transporting any said gasoline or motor fuel shall be subject to seizure by the Supervisor and forfeiture and sale in the manner provided for in this and other Sections of this Act."

And it is only "the United States Government or any agency or department thereof" which is exempt from said tax; for section 14 of Act No. 6 of 1928 (Ex. Sess.) provides that:

"The tax herein levied shall not apply to sales to the United States Government or any agency or department thereof, and when such tax is paid by the said United States Government or any agency or department thereof it shall be refunded by the Supervisor of Public Accounts upon proper showing and authentic proof thereof and 'shall be paid from the funds in the hands of the said Supervisor of Public Accounts which have been collected under this Act and which have not been paid by the said Supervisor of Public Accounts to the State Treasurer as provided herein."

And accordingly, under the rule "inclusio unius est exclusio' alterius," the United States government and its departments alone are entitled to a refund of said tax upon gasoline purchased by it within that state upon which said tax shall already have been paid; and no municipality or parish or other public corporation is entitled to such refund.

■ So that, if defendant's contention be correct and municipalities, parishes, and other public corporations be exempt from said tax of 4 cents per gallon on gasoline bought out of the state, but obliged to bear the whole of said tax on all gasoline purchased within the state, then the act is an invitation to every municipality, parish, or other public corporations to purchase all gasoline it may need from dealers residing outside of the state, thereby depriving dealers within the state of their reasonable and legitimate profit on the enormous quantities of gasoline required by municipalities, parishes, and other public corporations, and a giving over of all such business and the profits thereof to their competitors, the dealers residing outside of the state. This would indeed amount to a policy of industrial suicide for the communities adopting it and for the state; and we do not think the Legislature intended any such consequences.

### III.

■■ The constitutional clause exempting "all public property" from taxation follows immediately the clause limiting the rate of the perennial ad valorem property tax. It is followed by exemptions of other property which, if taxable at all, would and could be subjected only to the aforesaid perennial ad valorem property tax. It has no application to any other tax. The tax herein involved is clearly a tax upon the sale, distribution, or use of the gasoline. It is therefore an excise tax. Gulf Refining Co. v. McFarland, 154 La. 251, 97 So. 433; Lionel's Cigar Store v. McFarland, 162 La. 956, 111 So. 341; Fleischmann Co. v. Conway, 168 La. 547, 122 So. 845; State v. Johnson, 173 La. 680, 138 So. 503. And exemption from a property tax does not include exemption from an excise tax. City of Portland v. Kozer, 108 Or. 375, 217 P. 833, 835, citing 1 Cooley on Taxation (3d Ed.) page 357; Matter of Merriam's Estate, 141 N. Y. 479, 36 N. E. 505; U. S. v. Perkins, 163 U. S. 625, 16 S. Ct. 1073, 41 L. Ed. 287; 37 Cyc. 1574.

### IV.

■ As for the proposition that the tax, where applied to the circumstances of this case, is an unwarranted interference with interstate commerce, that was answered by the Supreme Court of the United States in Gregg Dyeing Co. v. Query (May 31, 1932) 286 U. S. 472, 52 S. Ct. 631, 634, 76 L. Ed. 1232, 84 A. L. R. 831, wherein that court said:

"As to the first question, we are not concerned with what the tax is called, but with what the statute does. It imposes an exaction with respect to gasoline purchased in other states and brought into South Carolina and there placed by appellants, in storage for future use within the State. By the terms of the act, as construed by the state court and applied to these appellants, interstate commerce in relation to the subject of the tax has ended. The gasoline has come to rest within the state, having been placed in appellants' storage tanks and added to appellants' property kept for local purposes. In such circumstances the state has the authority 'to tax the products or their storage or sale.' Texas Co. v. Brown, 258 U. S. 466, 478, 42 S. Ct. 375, 379, 66 L. Ed. 721; Sonneborn Bros. v. Cureton, 262 U. S. 506, 519, 520, 43 S. Ct. 643, 67 L. Ed. 1095; Hart Refineries v. Harmon, 278 U. S. 499, 501, 502, 49 S. Ct. 188, 189, 73 L. Ed. 475. Not only may local sales of gasoline thus brought into the state be taxed, but its use as well. This was specifically determined in Bowman v. Continental Oil Co., 256 U. S. 642, 648, 649, 41 S. Ct. 606, 65 L. Ed. 1139. See Hart Refineries v. Harmon, supra; Breece Lumber Co. v. Asplund, 283 U. S. 788, 51 S. Ct. 352, 75 L. Ed. 1415. There is an exception in the case of a tax directly on use in interstate commerce, as on use in interstate transportation. Helson v. Kentucky, 279 U. S. 245, 252, 49 S. Ct. 279, 73 L. Ed. 683; Eastern Air Transport v. South Carolina Tax Commission, 285 U. S. 147, 52 S. Ct. 340, 76 L. Ed. 673, decided March 14, 1932. In view of these well-established principles, we find no ground for concluding that the state

could not impose the tax with respect to the gasoline of appellants which was kept within the state for use in their local enterprises. As the Court said, in Hart Refineries v. Harmon, supra, interstate transportation having ended, the taxing power of the state in respect of the commodity may, so far as the commerce clause of the Federal Constitution is concerned, 'be exerted in any way which the state's Constitution and laws permit.' This, of course, is on the assumption that the tax does not discriminate against the commodity because of its origin in another state."

See, also, State v. Johnson, 173 La. 669, 138 So. 503.

Decree.

For the reasons assigned, the judgment appealed from is affirmed.

149 So. 551